**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DIANA CRANDALL FRANTZ,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

      Defendant-Appellee.

No. 07-1057

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 06-cv-905-PSF)**

---

Submitted on the briefs:[*]

Marcy F. Holland, Denver, Colorado, for Plaintiff-Appellant.

Troy A. Eid, United States Attorney, Kurt J. Bohn, Assistant United States
Attorney, Debra J. Meachum, Special Assistant United States Attorney, Social
Security Administration, Office of the General Counsel, Denver, Colorado, for
Defendant-Appellee.

---

Before **KELLY**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**ANDERSON**, Circuit Judge.

Appellant Diana Crandall Frantz appeals from the denial of her claim for disability insurance benefits. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

This case was decided at step four of the five-step evaluation sequence. *See generally Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). Ms. Frantz alleges disability due to bipolar disorder and migraine headaches. The administrative law judge (ALJ) determined that Ms. Frantz had the residual functional capacity (RFC) to "understand, remember and carry out instructions which are of the type that can be learned on the job in up to three months and she can tolerate occasional contact with the public." A.R. Vol. III at 22. She had no exertional limitations. The ALJ concluded that Ms. Frantz could perform her past relevant work as a general clerk and denied benefits. The Appeals Council adopted the ALJ's determination making it the final decision of the Commissioner. Ms. Frantz appealed to this court after the district court affirmed the ALJ and entered judgment for the Commissioner.

On appeal, Ms. Frantz argues that the ALJ erred in improperly analyzing the medical opinions in her record and completely ignoring the opinion of one of her medical providers. Ms. Frantz further argues that the ALJ failed to engage in

the proper legal analysis when he found her capable of performing her past relevant work. We agree and reverse.

"We review the [Commissioner's] decision to determine whether [his] factual findings are supported by substantial evidence in the record viewed as a whole and whether [he] applied the correct legal standards." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). In the course of our review, we may "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

Analysis of medical opinions

After moving to Denver in 2002, Ms. Frantz, who is an Air Force veteran, began receiving treatment at the Veterans' Administration Hospital (VA) for her previously diagnosed bipolar disorder, anxiety, and migraine headaches. From the record it appears that, at least for purposes of her disability claim, Ms. Frantz never had a treating physician as such. Instead, a large part of her medical history is comprised of reports from Karen Youngs, a clinical nurse specialist (CNS), who on several occasions indicated that Ms. Frantz was incapable of working because of her irritability, poor focus, difficulty in coming to work on a reliable basis, numerous mistakes, and handling stress in the workplace.

A.R. Vol. III at 158, 178, 255. Ms. Youngs noted a ten-year pattern of Ms. Frantz working for six to twelve months, but then being unable to work for the next year or two. *Id.* She further noted that Ms. Frantz's "ability to work is highly questionable as she cannot reliably show up to work due to her mood problems, and at times cannot stay at work for the same reason. Her mistakes are likely related to poor concentration resulting from depression." *Id.*

While the ALJ did discuss some of the evidence from Ms. Youngs' treatment notes, *see* A.R. Vol. III at 18, he did not explain why he disregarded Ms. Youngs' overall medical opinion in favor of opinions from two examining physicians who each saw Ms. Frantz only once and who each considered a particular aspect of Ms. Frantz's condition and found her to be capable of work, despite not having considered all of her impairments in combination. *See id.* at 199-203 (progress notes from Dr. William H. Graham, M.D., psychiatric consultant to the VA); *id.* at 204-06 (progress notes from Barbara Genet D'Arcy, neurology consultant to the VA).[1]

Since the ALJ announced his decision, the Social Security Administration has published Social Security Ruling 06-03p, *Titles II and XVI: Considering Opinions and Other Evidence From Sources Who are Not "Acceptable Medical*

_____

[1]     The ALJ credits this latter evidence to Thomas J. Meyer, M.D. While Dr. Meyer did sign and co-sign the report, the author of the report was Barbara Genet D'Arcy, identified only as a neurology consultant. *See* A.R. Vol. III at 204-206.

*Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939 (S.S.A. Aug. 9, 2006) (hereafter "SSR 06-03p" or "the Ruling"). Acceptable medical sources include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). Only "acceptable medical sources" can provide evidence to establish the existence of a medically determinable impairment, *id.*, only they can provide medical opinions, 20 C.F.R. § 404.1527(a)(2), and only they can be considered treating sources, 20 C.F.R. § 1527(d).

The regulations, however, also contemplate the use of information from "other sources," both medical and non-medical. *See* 20 C.F.R. §§ 404.1502, 404.1513(d). In the category of other medical sources, the regulations include, but are not limited to, nurse practitioners,[2] physicians' assistants, naturopaths,

---

[2]    The ALJ properly referred to Ms. Youngs as a clinical nurse specialist (CNS), *see* A.R. Vol. III at 18, 147, although the parties on appeal refer to her as a nurse practitioner (NP). "CNS programs were the first nursing specialty to require graduate level preparation, and thus served as a model for excellence in advanced practice nursing education." Stacey B. Rose et al., *Role Preservation of the Clinical Nurse Specialist and the Nurse Practitioner*, The Internet Journal of Advanced Nursing Practice 3 (1996), http://www.ispub.com/ostia/index.php?xmlFilePath=journals/ijanp/vol5n2/role.xml. Both CNSs and NPs are considered advanced practice nurses, and both must be able to "assess, diagnos[e], prescribe therapy, and maintain accountability." *Id.* at 4. Additionally, they must be skilled at effective communication, critical thinking, decision-making, critical and accurate assessment, and the ability to evaluate client responses and create appropriate interventions. *Id.*

(continued...)

chiropractors, audiologists, and therapists.  20 C.F.R. § 404.1513(d)(1).  These

sources, as well as the other non-medical sources, may provide evidence "to show

the severity of [a claimant's] impairment(s) and how it affects [a claimant's]

ability to work."  20 C.F.R. § 404.1513(d).

The agency promulgated SSR 06-03p to "clarify how [it] consider[s]

opinions from sources who are not 'acceptable medical sources[.]'"  SSR 06-03p

at *1.  Recognizing the growth of managed health care in recent years and the

increasing use of medical sources who are not technically "acceptable medical

sources," the Ruling states that "[o]pinions from these medical sources . . . are

important and should be evaluated on key issues such as impairment severity and

functional effects, along with the other relevant evidence in the file."  *Id.* at *3.

The Ruling specifies that the factors for weighing the opinions of

acceptable medical sources set out in 20 C.F.R. § 404.1527(d) and § 416.927(d)

apply equally to "all opinions from medical sources who are not 'acceptable

medical sources' as well as from 'other [non-medical] sources.'"  *Id.* at *4.  Thus,

> depending on the particular facts in a case, and after applying the
> factors for weighing opinion evidence, an opinion from a medical
> source who is not an "acceptable medical source" may outweigh the
> opinion of an "acceptable medical source," including the medical
> opinion of a treating source.  For example, it may be appropriate to

---

[2](...continued)

Because 20 C.F.R. §§ 404.1513(d) and SSR 06-03p contain a nonexclusive list of "other sources," we have no trouble concluding that a CNS is properly included as an "other source" for purposes of the regulations and SSR 06-03p.

give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.* at *5.

The Ruling instructs the adjudicator to

explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6.

Here, the ALJ referred to some of the evidence gleaned from Ms. Youngs' treatment notes but did not discuss what weight he gave to her opinion on the severity of Ms. Frantz's limitations and on the functional effect those limitations have on her overall ability to work. He ignored evidence from Ms. Youngs that would support a finding of disability while highlighting evidence favorable to the finding of nondisability. This was error. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

"Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Sloan v. Astrue*, 499 F.3d 883,

889 (8th Cir. 2007). While SSR 06-03p is merely a clarification of existing policy and not a policy change, the ALJ did not have the benefit of the Ruling when he arrived at his decision. We therefore cannot determine whether Ms. Youngs' evidence could have led to a different result had the ALJ assessed it with reference to the new Ruling. *See id.* The Commissioner's post hoc argument supplying possible reasons for the ALJ's seeming rejection of Ms. Youngs' opinions is unavailing. *See Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process"). We therefore reverse and remand on this issue.

Ms. Frantz also correctly points out that the ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by Dr. Garnand, a nonexamining physician, but rejecting others without discussion. This court recently addressed this issue in *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007). Here, as in *Haga*, the ALJ's RFC determination reflected restrictions consistent with some of the moderate limitations identified on the Mental RFC, but not with all of them. Dr. Garnand's indication of Ms. Frantz's moderate limitations in understanding, remembering and carrying out detailed instructions and interacting appropriately with the public were considered by the ALJ. *See* A.R. Vol. III at 20. He did not, however, consider Dr. Garnand's opinion that Ms. Frantz had

similarly moderate limitations in "maintaining attention and concentration for an extended period of time,"[3] her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and in "the ability to work in coordination with or proximity to others without being distracted by them." A.R. Vol. III at 111.

While we recognize that an ALJ does not have to discuss every piece of evidence, *see Clifton*, 79 F.3d at 1009-10, he or she is required to discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected, *id.* at 1010. As with SSR 06-03p, the ALJ did not have the benefit of our decision in *Haga*, and the Commissioner does not distinguish it in his brief. We therefore also reverse on this issue to allow the ALJ the opportunity to explain his treatment of the Mental RFC evidence.

RFC determination

We also reverse and remand so that the ALJ can properly assess Ms. Frantz's residual functional capacity and explain his determination that she can do her past relevant work. At step four the ALJ found Ms. Frantz able to "understand, remember and carry out instructions which are of the type that can

---

[3]     Interestingly, the ALJ did find that Ms. Frantz has "moderate difficulties in maintaining social functioning" and "moderate difficulties in concentration, persistence and pace" when he considered whether her impairments met a listing at step three. A.R. Vol. III at 16. He did not, however, include these moderate limitations in his later RFC determination, an inconsistency that should be addressed on remand.

be learned on the job in up to three months and she can tolerate occasional contact with the public. The claimant has no exertional limitations."

A.R. Vol. III at 22.

> Step four of the sequential analysis, at which the ALJ found plaintiff not disabled, is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).

Ms. Frantz argues correctly that the ALJ failed to determine and then make findings regarding the mental demands of her past relevant work as a general clerk.

> As we explained in *Winfrey*,
>
> [w]hen the claimant has a mental impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

*Id.* at 1024 (quotation omitted). Here, even though the ALJ found Ms. Frantz's bipolar disorder to be a severe impairment, he did not develop any evidence regarding the mental demands of Ms. Frantz's past relevant work, either as she did it or as it is typically performed in the national economy. The ALJ stated that

-10-

"[t]he impartial vocational expert . . . testified that based upon the claimant's residual functional capacity, the claimant could return to her past relevant work as a general clerk, as previously performed and as generally performed in the national economy." A.R. Vol. III at 21. The vocational expert (VE), however, did not testify about the mental demands of Ms. Frantz's past relevant work, and the work history report the VE filled out says nothing about that issue. *See id.* at 110. The ALJ's conclusory statement that "[t]he exertional and non-exertional requirements of this job [as a general clerk] are consistent with the claimant's residual functional capacity" is insufficient under *Winfrey* to discharge his duty to make findings regarding the mental demands of Ms. Frantz's past relevant work. This case is unlike *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003), where the ALJ quoted the VE's testimony approvingly in support of his own findings at steps two and three of the analysis. Here, there was no VE testimony, and no evidence of any kind, to establish the mental demands of Mr. Frantz's past relevant work and thus no evidence to support a finding that Ms. Frantz retains the mental RFC to work as a general clerk.

The judgment of the district court is REVERSED, and this case is REMANDED with instructions to remand to the agency for additional proceedings.