FILED
United States Court of Appeals
Tenth Circuit

April 10, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TERESA A. BEASLEY,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[*]

Defendant-Appellee.

No. 12-6256
(D.C. No. 5:11-CV-00559-W)
(W.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **O'BRIEN**, **McKAY**, and **BALDOCK**, Circuit Judges.

Teresa A. Beasley appeals from an order of the district court affirming the

Commissioner's decision denying her application for disability benefits. We have

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we affirm.

---

[*]    In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in
this action.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

On January 18, 2007, Ms. Beasley sought care at an emergency room (ER) after she slipped and fell on the ice in front of her office building, hitting her head. Medical imaging of Ms. Beasley's head, spine, and hip was normal. Medical personnel advised her to stay off work until the following Monday and prescribed medication for her pain. She returned to the ER the next day. Additional testing was performed, but no abnormalities were noted.

Over the next year and a half, Ms. Beasley saw numerous providers for physical and psychological issues related to her slip-and-fall accident.[1] On June 19, 2008, Ms. Beasley filed an application for benefits, alleging disability from the date of the accident. The agency denied her application initially and on reconsideration. Ms. Beasley then received a de novo hearing before an administrative law judge (ALJ).

The ALJ found that Ms. Beasley had the following severe impairments: back disorder, affective mood disorder, and "status post concussion." Aplt. App., Vol. II (Admin. R.) at 17. The ALJ determined, however, that Ms. Beasley retained the residual functional capacity (RFC) for light work, with some additional limitations. After considering the medical evidence and her hearing testimony, the ALJ found that Ms. Beasley's "medically determinable impairments could reasonably be

---

[1]    We will not recite all of the medical evidence here. The parties are familiar with the evidence and it is outlined in detail in the magistrate judge's report and recommendation, *see* Aplt. App., Vol. I at 16-27.

expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* at 22. In particular, the ALJ noted that:

> In the instant case, the issue is not the existence of pain, but rather the degree of incapacity incurred because of it. While the claimant complains of severe pain, it does not seem reasonable to conclude from the minimal findings in evidence that such could be the basis for the degree of pain alleged. She does not appear to be experiencing progressive physical deterioration which might be expected when there is intense and continuous pain. Likewise, [Ms. Beasley's] routine does not appear restricted by her alleged disability; but, rather by choice.

*Id.* at 23.

At step four of the evaluation process, the ALJ concluded that Ms. Beasley could not perform her past relevant work, but he determined at step five that jobs existed in significant numbers in the national economy that she could perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining five-step process for evaluating claims for disability benefits). He therefore denied her application for disability benefits. The Appeals Council denied review of the ALJ's decision and Ms. Beasley appealed to the district court. The district court upheld the ALJ's decision, and this appeal followed.

## II.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir.

- 3 -

2003).  On appeal, Ms. Beasley argues that the ALJ failed to properly evaluate the medical opinion evidence.  She also asserts that the ALJ's RFC assessment is not supported by substantial evidence.

A.  *Dr. Linden's Opinion*

Dr. David E. Linden was Ms. Beasley's treating psychiatrist.  She argues that "the ALJ failed to both provide specific and legitimate reasons for rejecting" Dr. Linden's opinion and failed "to properly evaluate the evidentiary support" for his opinion under the relevant factors.  Aplt. Br. at 40.  We disagree.

If an ALJ fails to give controlling weight to a treating physician's opinion, as the ALJ did here, then the ALJ must decide how much weight to assign the opinion.  The ALJ should consider the six factors in the relevant regulation[2] and then "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion."  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks and brackets omitted).  When an ALJ rejects a treating-physician opinion completely, the ALJ must give "specific, legitimate" reasons for doing so.  *Id.* (internal quotation marks omitted).  An ALJ is not required to explicitly discuss all of the factors in deciding what weight to give a medical opinion.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

---

[2]     The factors that must be considered are:  "Examining relationship," "Treatment relationship," "Supportability," "Consistency," Specialization," and "Other factors."  20 C.F.R. § 404.1527(c).

Dr. Linden filled out a mental RFC questionnaire in which he found Ms. Beasley functionally limited in a number of different areas. The ALJ did not completely reject Dr. Linden's opinion. Instead, he assigned the opinion "some weight," incorporating Dr. Linden's findings that were consistent with the overall evidence into Ms. Beasley's RFC. In doing so, the ALJ gave good reasons for the weight he assigned Dr. Linden's opinion, noting that Dr. Linden's finding of "multiple mental limitations" was "inconsistent" with his treating records and not supported by corresponding objective evidence. Aplt. App., Vol. II (Admin. R.) at 24. The ALJ also found it probative that Dr. Linden's treating records did not reflect that he had assigned Ms. Beasley any limitations or restrictions.

Ms. Beasley first complains about the ALJ's statement at the beginning of his discussion of Dr. Linden's opinion that the handwritten notes accompanying the mental RFC were "'difficult to read.'" Aplt. Br. at 33 (quoting Admin. R. at 24). She argues that if the ALJ was unable to read the notes he should have recontacted Dr. Linden for clarification. Alternatively, she argues that if the ALJ could read the notes, he should have discussed them when evaluating the weight to give the opinion. Both arguments fail.

An ALJ need only recontact a treating source "[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1520b(c). Although the ALJ noted that the handwritten notes were difficult to

read, he further noted that "Dr. Linden also completed a checklist, indicating multiple mental limitations." Aplt. App., Vol. II (Admin. R.) at 24. The ALJ then discussed those findings. The ALJ had no duty to recontact Dr. Linden in this situation because the evidence was adequate to evaluate whether Ms. Beasley was disabled.

In addition, the ALJ is not required to discuss every piece of evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ did not need to expressly discuss the handwritten notes, "which referred to Ms. Beasley's multiple mental diagnoses, GAF score of 50 . . . , chronic dysphoria, decreased motivation and concentration, and continued pain," Aplt. Br. at 34, because they did not involve "uncontroverted evidence" that the ALJ was choosing not to rely on, nor did they involve "significantly probative evidence" that he was rejecting, *see Clifton*, 79 F.3d at 1010. The diagnoses were contained in Dr. Linden's underlying treatment records, and those records also contained references to Ms. Beasley's dysphoria and other symptoms. The ALJ considered and discussed those records earlier in his decision. *See* Aplt. App., Vol. II (Admin. R.) at 21. The GAF score of 50, which reflects a finding of serious symptoms or any serious impairment in social, occupational, or school functioning, is consistent with the limitations that Dr. Linden assessed in the RFC questionnaire. The ALJ addressed those limitations in determining the weight to assign Dr. Linden's opinion and, therefore, the ALJ was not required to expressly address the GAF score.

Next, Ms. Beasley complains about the reasons the ALJ provided for giving only some weight to Dr. Linden's opinion. She challenges the ALJ's findings that Dr. Linden's treatment records were not consistent with his RFC assessment and that there was a lack of objective evidence to support the limitations assessed in the RFC.

In Dr. Linden's treatment records, he did occasionally note that Ms. Beasley's mood was dysphoric and her affect was sad and tearful, but his records do not include findings that Ms. Beasley exhibited or was experiencing significant functional limitations caused by her mental impairment. The majority of Dr. Linden's treatment records reflect that on mental status examination Ms. Beasley was "pleasant and cooperative" and exhibited relatively stable somatic functions, normal motor activity, and "[n]o acute psychotic symptoms." *Id*. at 475, 477, 478, 480, 481, 487, 490, 491, 495, 496, 498, 499, 562, 563, 565, 566, 569, 624, 626, 628, 629, 630, 631, 632, 633, 634, 635, 636.

The ALJ also considered other medical evidence in the record, including the observations of other mental health professionals, Dr. Ozolins (as referenced in Dr. Moorad's records) and Dr. Johnsen, and a neurosurgeon, Dr. Banowetz. In these reports of psychological and physical evaluations of Ms. Beasley, these physicians found that Ms. Beasley exaggerated her symptoms. *See id*. at 21-22. The ALJ likewise found that Ms. Beasley's testimony regarding her pain and limitations was not entirely credible, a determination that Ms. Beasley does not challenge on appeal.

The ALJ properly evaluated Dr. Linden's opinion, considering the evidence under the relevant framework and giving good reasons for the weight he ultimately assigned the opinion. We see no reversible error in the ALJ's treatment of Dr. Linden's opinion.

B. *Dr. Blough's Opinion*

Dr. J. Arden Blough examined Ms. Beasley one time in September 2008 in order for her to obtain an impairment rating for her worker's compensation claim. Ten months later, in July 2009, he filled out a form assessing her ability to do work-related physical activities. Ms. Beasley raises the same arguments with respect to Dr. Blough's opinion that she did with Dr. Linden's opinion, namely that "the ALJ failed to provide specific and legitimate reasons for rejecting most of Dr. Blough's opinions, and failed to properly evaluate those opinions under the relevant factors." Aplt. Br. at 41. We disagree.

Since Dr. Blough was not a treating physician, his opinion was not entitled to more weight under the relevant regulations. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources[.]"). As with any acceptable medical source opinion, an ALJ should consider the relevant factors, determine the weight to assign the opinion, and explain the reasons for assigning that weight. *See id*. § 404.1527(c); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)

The ALJ properly considered Dr. Blough's opinion. In Dr. Blough's initial report prepared after his 2008 examination, Dr. Blough found that Ms. Beasley could not perform her prior work, but he did note that she would be an excellent candidate for vocational rehabilitation. The ALJ concluded that this statement "strongly suggests that Dr. Blough found [Ms. Beasley] would be able to perform other types of work." Aplt. App., Vol. II (Admin. R.) at 24. The ALJ noted that Dr. Blough did not re-examine Ms. Beasley before completing the July 2009 assessment of Ms. Beasley's ability to do work-related activities.

The ALJ did give weight to Dr. Blough's findings in his July 2009 assessment that Ms. Beasley was able to lift and/or carry twenty pounds occasionally and twenty pounds frequently and that Ms. Beasley should have several occasional postural limitations. But Dr. Blough also found in the July 2009 assessment that Ms. Beasley would need to lie down two to three times a day "at unpredictable intervals during a work shift," *id.* at 641, and that she would be absent from work about three times a month, limitations that would effectively preclude Ms. Beasley from performing any job. The ALJ determined that these remaining findings should be given little weight because they were "inconsistent with or not specified in [Dr. Blough's] own previous medical assessment." *Id.* at 25.

Ms. Beasley complains that the ALJ should not have relied on Dr. Blough's statement regarding her potential for vocational rehabilitation, arguing that it has limited relevance in a social security case. But the ALJ properly considered this

statement as part of his evaluation of the consistency between Dr. Blough's September 2008 post-examination report and the assessment form he prepared ten months later.

We conclude the ALJ followed the proper framework in considering Dr. Blough's opinion. The ALJ did not err in determining that a portion of the opinion was entitled to be given weight but that the remainder of the opinion was entitled to little weight, and he adequately explained the reasons for that determination.

C. *The ALJ's RFC Assessment*

Ms. Beasley contends that the ALJ erred in determining her RFC because he did not adequately consider her limitations in social functioning. After reciting the physical limitations in her RFC, the ALJ concluded by stating that Ms. Beasley "can understand, remember, and carry out simple, routine, and repetitive tasks" and "can respond appropriately to supervision, co-workers, the general public, and usual work situations." *Id*. at 19.

Ms. Beasley asserts that since the ALJ found she had moderate limitations in social functioning in the "paragraph B" criteria when determining whether she met a listing at step three, the ALJ necessarily had to find limitations related to social functioning. We disagree.

When evaluating a mental impairment at step three, the ALJ utilizes the psychiatric-review technique described in 20 C.F.R § 404.1520a, which "requires

adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' criteria . . . of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184, at *4. The "paragraph B" criteria are: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00C. The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

Once an impairment is determined to be severe, it must be reflected in the RFC. *See Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). Here, the ALJ did include restrictions based on Ms. Beasley's severe mental impairment, limiting her to performing "simple, routine, and repetitive tasks." Aplt. App., Vol. II (Admin. R.) at 19. But the ALJ's finding of "moderate difficulties" in social functioning in the "paragraph B" criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment. The RFC is defined as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). In this case, the ALJ found that, in spite of any limitations in social functioning, Ms. Beasley could "respond appropriately to supervision, co-workers, the general public, and usual work situations." Aplt. App., Vol. II

(Admin. R.) at 19. The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had "moderate difficulties" in social functioning as part of the distinct step-three analysis.[3]

Ms. Beasley also contends that the ALJ's failure to include any social limitations in her RFC assessment was not supported by substantial evidence. We have explained that "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted). Under this standard, the ALJ's RFC assessment is supported by substantial evidence.

As noted in the discussion of Dr. Linden's opinion, the majority of his treatment records reflect normal mental status examinations, and he did not note any specific limitations regarding Ms. Beasley's social functioning. In his mental RFC questionnaire, which the ALJ gave some weight to, Dr. Linden opined that Ms. Beasley had no limitations in asking simple questions or requesting assistance; maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. Aplt. App., Vol. II (Admin. R.) at 655-56. He found that she was limited, but could satisfactorily: work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately

---

[3] We decline Ms. Beasley's invitation to read this court's dicta in a footnote in *Frantz v. Astrue*, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007), as requiring an ALJ's RFC assessment to mirror his step three-findings.

to criticism from supervisors; and interact appropriately with the general public. *Id.* Finally, he found that she was seriously limited in, but not precluded from, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. *Id.* at 655.

The ALJ also noted the assessment of a state agency psychologist who found that Ms. Beasley had only mild difficulties in maintaining social functioning, a conclusion that was affirmed by a second state agency psychologist. The ALJ noted that these findings were generally consistent with the medical evidence, but were further modified in the determination of Ms. Beasley's RFC in order to reflect the evidence overall.

There is substantial evidence in the record to support the ALJ's determination that Ms. Beasley is able to "respond appropriately to supervision, co-workers, the general public, and usual work situations." Admin. R. at 19. Accordingly, we see no reversible error in the ALJ's RFC assessment.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

Entered for the Court

Bobby R. Baldock
Circuit Judge