FILED
United States Court of Appeals
Tenth Circuit

October 3, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

THELMA ANDERSEN, o/b/o
Terry D. Andersen, deceased,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[*]

Defendant-Appellee.

No. 12-4181
(D.C. No. 2:10-CV-00872-CW)
(D. Utah)

ORDER AND JUDGMENT[**]

Before **HOLMES**, **HOLLOWAY**, and **BACHARACH**, Circuit Judges.

Thelma Andersen, as surviving spouse of Terry D. Andersen, appeals from the

order entered by the district court affirming the Social Security Commissioner's

---

[*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in
this action.

[**] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

decision to deny her husband's application for disability insurance benefits.
Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

The administrative record indicates that Mr. Andersen suffered from significant heart and lung conditions prior to his date last insured of December 31, 1998. Mr. Andersen claimed that he was unable to work since May 4, 1993, as a result of these conditions, primarily due to fatigue and shortness of breath. But in April 2002, the administrative law judge (ALJ) denied Mr. Andersen's application for disability insurance benefits. Following unsuccessful appeals to the Appeals Council and the United States District Court for the District of Utah, Mr. Andersen challenged the ALJ's adverse decision in this court. In that prior appeal, we concluded that "the ALJ erred in failing to properly determine the weight ultimately assigned to Mr. Andersen's treating physicians' opinions." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). We therefore remanded the case so that the ALJ could reevaluate the opinions of Mr. Andersen's treating physicians (Dr. Wren, Dr. Woods, Dr. Hodges, and Dr. Mackie[1]) and perform a proper sequential evaluation of their opinions in accordance with the controlling regulations and this court's case law.

On January 27, 2010, after receiving additional medical evidence and conducting another hearing at which Mr. Andersen's wife testified (Mr. Andersen

---

[1]     The first three doctors are internists; Dr. Mackie is a cardiologist.

died in January 2007 as a result of end stage congestive heart failure), the ALJ issued a decision in which he again denied Mr. Andersen's application for disability insurance benefits. In his decision, the ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (summarizing five-step process). First, at step one, the ALJ found that Mr. Andersen had not engaged in substantial gainful activity from his alleged onset date through his date last insured. The ALJ then found, at step two, that Mr. Andersen suffered from the following severe impairments through his date last insured:

> history of mitral valve disease with history of rheumatic heart disease; an enlarged heart; open heart mitral valve repairs in 1970 and 1976; mitral stenosis, status post mitral valve replacement with prosthetic St. Judge mitral valve in 1984; aortic sclerosis with moderate aortic stenosis and moderately severe aortic regurgitation; moderately severe tricuspid regurgitation with pulmonary artery hypertension; atrial fibrillation; chronic congestive heart failure with progressive dyspnea on exertion; chronic obstructive pulmonary disease; diffuse pulmonary fibrosis, secondary to a long history of smoking cigarettes; and mononuclear vision (blindness in left eye) due to stroke.

Admin. R. at 337.[2]

The ALJ found, at step three, however, that Mr. Andersen did not have an impairment or combination of impairments that met or equaled one of the per se disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Turning to steps four and five, and after reevaluating the opinions of Dr. Wren, Dr. Woods,

---

[2] The administrative record is contained in Volumes I and II of the Appendix to Appellant's Opening Brief.

Dr. Hodges, and Dr. Mackie, the ALJ next found that Mr. Andersen had the residual functional capacity (RFC) to perform a limited range of light, unskilled work from his alleged onset date through his date last insured. Given this RFC, the ALJ then found, at step four, that Mr. Andersen did not have the RFC to perform any of his past relevant work. However, at step five, the ALJ determined that there were light jobs that existed in significant numbers in the national economy that Mr. Andersen could have performed through his date last insured. The ALJ therefore determined that Mr. Andersen was not under a disability during the relevant time period of May 4, 1993, through December 31, 1998.

In June 2010, the Appeals Council denied Mrs. Andersen's request for review, rendering the ALJ's decision the final decision of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Mrs. Andersen then filed this action in federal court on behalf of her husband, and, in August 2012, the district court entered an order affirming the ALJ's decision. This appeal followed.

## II. DISCUSSION

On appeal, Mrs. Andersen argues that the ALJ committed four errors in his decision on remand. First, she claims the ALJ erred in assessing Mr. Andersen's RFC because: (a) the ALJ failed to take into account his left ventricular hypokinesis; and (b) the ALJ failed to accord the opinions of his treating physicians controlling weight or, in the alternative, greater weight than the opinion of the nonexamining state agency physician. Second, she claims the ALJ erred in posing an inadequate

- 4 -

hypothetical question to the vocational expert at the hearing conducted during the remand proceedings. Third, she claims the ALJ erred by failing to find that Mr. Andersen met or equaled the listing for chronic heart failure, Listing 4.02. And finally, she claims the ALJ erred in assessing her and her husband's credibility. We will address these contentions in the order presented.

## A. Standard of Review

In our review of the ALJ's decision, we must determine if the ALJ has "applied the correct legal standards" and also if the ALJ's "factual findings are supported by substantial evidence in the record viewed as a whole." *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal quotation marks omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

But in reviewing the ALJ's decision, "we may neither reweigh the evidence nor substitute our judgment for that of the agency." *Frantz*, 509 F.3d at 1300 (internal quotation marks omitted). As a result, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at

1084 (internal quotation marks omitted).  In other words, "[w]e may not displace the

agenc[y's] choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo."  *Id.*

(second alteration in original) (internal quotation marks omitted).  Instead, where

substantial evidence supports an ALJ's decision, "we may not reweigh the evidence

or try the issues de novo in order to advance a different view."  *Wall*, 561 F.3d at

1069 (internal quotation marks omitted).

### B.  Left Ventricular Hypokinesis

Mrs. Andersen claims the ALJ committed reversible error because, "[i]n spite

of the Commissioner's mandate that the ALJ consider all of a claimant's medically

determinable impairments, . . . there is no indication in the ALJ's decision that he

took into account Plaintiff's left ventricular hypokinesis in ruling upon his

disability."  Aplt. Opening Br. at 10-11.  According to Mrs. Andersen:

> Such an oversight was not only in contravention of the Commissioner's
> regulations but ignored a significant impairment that, when combined
> with the damage to two other chambers of Plaintiff's heart, rendered
> him unable to function in the workplace.  There is no question that when
> the left ventricle of an individual's heart is compromised, it has a
> significant impact upon a person's ability to engage in normal daily
> activities for the left ventricle pumps oxygenated blood to the rest of the
> body.  Said left ventricle dysfunction was noted throughout Plaintiff's
> medical records and was the obvious cause of his progressive fatigue
> and weakness and dyspnea (shortness of breath) with decreased exercise
> tolerance.

*Id.* at 11 (record citations omitted).

We agree with the Commissioner that Mrs. Andersen's argument is belied by the ALJ's decision. As the Commissioner has succinctly explained:

> Although the ALJ did not explicitly discuss left ventricular hypokinesis, the ALJ adequately accounted for its limiting effects by finding Andersen had as a severe impairment "chronic congestive heart failure with progressive dyspnea [shortness of breath] on exertion." (App. 337). Congestive heart failure "means that your heart can't pump enough blood to meet your body's needs." MayoClinic.com, Heart failure, http://www.mayoclinic.com/health/heart-failure/DS00061 (last visited Mar. 5, 2013). It can be caused by the fact that the left ventricle cannot contract vigorously, and symptoms include shortness of breath, fatigue, and weakness. *See id.* (follow "Symptoms" hyperlink and "Causes" hyperlink). Thus, by finding congestive heart failure to be severe, and considering its effects on Andersen's ability to work, the ALJ adequately accounted for Andersen's ventricular dysfunction.

*Id.* at 33-34 (alteration in original).

We also note that the ALJ discussed evidence of Mr. Andersen's left ventricular dysfunction when determining his residual functional capacity. *See* Admin. R. at 342 (noting "moderate global left ventricular hypokinesis"), 343 (noting "progressive left ventricular dysfunction"), 353 (noting "moderate global hypokinesis"). The ALJ also discussed the limitations that Mr. Andersen alleged were caused by his left ventricular dysfunction, including fatigue, weakness, and shortness of breath.

Finally, at step two of the sequential evaluation process, the ALJ stated that he "carefully reviewed and considered all the evidence, regardless of whether it is cited specifically" in his decision. Admin. R. at 337. This court's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter."

*Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (internal quotation marks omitted).

### C. Evaluation of Treating Physician Opinions

"Treating source medical opinions are [] entitled to deference," and must either be given controlling weight or assigned some lessor weight "using all of the factors provided in 20 C.F.R. 404.1527." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). To ensure that these opinions receive proper deference, an ALJ reviewing the opinions of treating sources must engage in a sequential analysis. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

First, an ALJ must determine whether the opinion deserves controlling weight. *Id.* Controlling weight must be given if the opinion is both supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). If both of these conditions are met, no other factors need be considered and the inquiry is at an end. *See id.*; *Watkins*, 350 F.3d at 1300.

If one or both of these conditions is lacking, an ALJ is not free to simply disregard the opinion or pick and choose which portions to adopt. Instead, the ALJ must proceed to a second determination, where the ALJ must both: (1) weigh the opinion "using all of the factors provided in 20 C.F.R. § 404.1527"; and (2) "give good reasons in the . . . decision for the weight [the ALJ] ultimately assigns the opinion." *Watkins*, 350 F.3d at 1300-01 (internal quotation marks and alteration

omitted).  Further, if the ALJ rejects a treating physician's opinion completely, he must give specific and legitimate reasons for doing so.  *Id.* at 1301.

To support his finding that Mr. Andersen could perform a limited range of light work during the relevant time period, the ALJ found that: (1) neither Dr. Wren, Dr. Woods, Dr. Hodges nor Dr. Mackie was Mr. Andersen's treating physician during the relevant time period; (2) even if any of them were treating physicians, none of their opinions to the effect that Mr. Andersen was unable to work at any exertional level during the relevant time period was entitled to controlling weight; and (3) after considering the factors set forth in 20 C.F.R. § 404.1527(c), each of their opinions was entitled to less weight than the opinion of the nonexamining state agency physician who reviewed Mr. Andersen's medical records and determined in November 2000 that he had the RFC to perform light work activity through his date last insured.  *See* Admin. R. at 347-58.  We agree with the Commissioner that the ALJ articulated numerous specific and legitimate reasons in his extremely thorough decision for giving less weight to the opinions of Dr. Wren, Dr. Woods, Dr. Hodges, and Dr. Mackie, and we see no reason to reiterate the ALJ's extensive analysis of those opinions here.  Having concluded that the ALJ properly discounted the opinions of these doctors and properly gave more weight to the opinion of the state agency physician, we also do not need to address the treating physician/controlling weight issues.

**D. Hypothetical Question to Vocational Expert**

Mrs. Andersen claims the ALJ erred by posing an inadequate hypothetical question to the vocational expert at the hearing held before the ALJ in November 2009. We disagree. As the Commissioner has correctly explained:

> [Mrs. Andersen's] argument . . . is simply a reiteration of her previous arguments: That the ALJ's hypothetical question was incomplete because it did not consider his ventricular hypokinesis and did not contain the limitations identified by several physicians . . . . Because the ALJ reasonably considered Andersen's ventricular dysfunction and reasonably discounted the doctors' opinions, the ALJ was entitled to rely on the vocational expert's testimony at step five.

Aplee. Br. at 56.

**E. Listing 4.02**

Mrs. Andersen claims the ALJ erred at step three of the sequential evaluation process by finding that her husband did not meet or equal the listing for "chronic heart failure," Listing 4.02, and she relies on the version of Listing 4.02 that was in effect in 1998. But the version of Listing 4.02 that was in effect in 1998 is not applicable to this case. Instead, the current version of Listing 4.02, which was enacted in 2006, applies to this case. *See* Revised Medical Criteria for Evaluating Cardiovascular Impairments, 71 Fed. Reg. 2312, 2313 (Jan. 13, 2006) ("In those cases decided by a court after the effective date of [these revised] rules, where the court reverses the Commissioner's final decision and remands the case for further administrative proceedings, on remand, we will apply the provisions of these final rules to the entire period at issue in the claim.").

- 10 -

In his decision, the ALJ found that Mr. Andersen did not meet or equal the current version of Listing 4.02, and Mrs. Andersen has failed to challenge that ruling. Moreover, as the Commissioner has pointed out, because Mr. Andersen was not bedridden during the relevant time period, he could not meet or equal the version of Listing 4.02 that was in effect in 1998 in any event. *See* Aplee. Br. at 29-30.

### F. The ALJ's Adverse Credibility Determination

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). In his decision, the ALJ found that Mr. and Mrs. Andersen's allegations concerning the fatigue and breathing problems related to Mr. Andersen's heart and lung problems were not credible in terms of the limiting effects of those symptoms. We conclude that the ALJ's adverse credibility determination is supported by substantial evidence in the record on which the ALJ relied, specifically: (1) the paucity of medical treatment that Mr. Andersen received from Dr. Mackie and his other doctors during the relevant time period; (2) the vague nature of much of Mr. and Mrs. Andersen's hearing testimony; (3) the fact that Mr. Andersen continued to smoke despite his doctors' recommendations that he quit smoking; and (4) the fact that Mr. Andersen was not always compliant with his doctors' recommendations.

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge