FILED
United States Court of Appeals
Tenth Circuit

January 29, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JEREMIAH ADAMS,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

Defendant-Appellee.

No. 13-7042
(D.C. No. 6:11-CV-00305-FHS-KEW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

Jeremiah Adams appeals from a district court order that affirmed the Social

Security Administration's (SSA's) denial of his applications for disability insurance

benefits (DIB) and supplemental security income benefits (SSIB).  We have

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we affirm.

_____

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

BACKGROUND

On April 10, 2009, Adams sought DIB and SSIB dating back to February 1, 2008 as the alleged disability onset date. At that time, he was twenty-eight years old. He claimed he was disabled due to bipolar disorder, panic attacks, post-traumatic stress disorder, depression, agoraphobia, a right-rotator-cuff injury, and fractures to his left and right ankles for which he has undergone several surgeries. A 2007 "Medication Assessment" form indicates he may also suffer from antisocial personality disorder (APD). Aplt. App., Vol. III at 381. Adams has a general equivalency diploma and has worked as a construction laborer and a manufacturing technician.

An administrative law judge (ALJ) held a hearing on June 7, 2010. Adams testified that he had been fired from several jobs for threatening coworkers and that he had been discharged from the army for fighting. He explained that he does not "like stupid people." *Id.* at 477. When he is in a manic phase, he "rearrang[es] furniture" and cleans his house "for like a week, week and a half." *Id.* at 481. His depressed states can last for weeks, and he contemplates suicide. But "[m]ost of the time [he is] always in a manic episode." *Id.* at 482. Although his left ankle has healed, his right ankle will require more surgery. He plays softball twice a month, but "half the time" "once [he] get[s] on base" he needs "a pinch-runner because of the pain and discomfort in [his] ankle." *Id.* at 484. He enjoys softball because "[he] get[s] to hit a ball as hard as [he] can at somebody and try to hurt them with the ball."

*Id.* He also testified that although he had used alcohol and marijuana in the past, the last time was "at least three years" before the hearing. *Id.* at 476, 477. Finally, Adams stated that the last time he saw a psychiatrist was several months earlier, and that he "kept calling back and trying to reschedule" his appointment with a therapist in order to then see a psychiatrist, "[but] they have never gotten back with [him]." *Id.* at 480.

After reviewing the medical evidence, the ALJ posed a hypothetical question to the attending vocational expert (VE), asking whether any of Adams's past jobs could be performed by a claimant limited to sedentary work who could "occasionally lift[] [and] carry 10 pounds," "frequently carry up to 10 pounds," "stand[] and walk at least two hours of an eight-hour work day," and perform only "simple, repetitive tasks" with "no more than incidental contact with the public." *Id.* at 495–96. According to the VE, such a claimant could not work in any of Adams's past jobs, but that claimant could perform other jobs in the national economy: clerical mailer; bonder or assembler; and sorter.

After the hearing, the ALJ denied Adams's request for DIB and SSIB. In doing so, the ALJ formulated Adams's residual functional capacity (RFC) to correspond to the limitations posed in the hypothetical to the VE. The ALJ concluded that Adams was not disabled because, while he could not perform his past jobs, there were other jobs in the national economy that he could perform.

The ALJ based his decision, in part, on Adams's lack of credibility. The ALJ noted that Adams complained of physical ailments, but that he focused his alleged inability to work on his mental and mood impairments. However, medical records reflected that he inconsistently adhered to his medication regimen and only intermittently pursued psychological treatment. When Adams takes his medication, according to the ALJ, "his condition is such that he should be able to sustain regular and continued employment." *Id.* at 20. Further, Adams testified that his therapist's and psychiatrist's scheduling conflicts impeded his treatment. However, the medical records refuted Adams's claims and showed that he canceled two appointments and refused to reschedule despite the medical staff's attempts to do so. Finally, the ALJ noted that Adams's testimony that he had not used alcohol and marijuana for three years prior to the hearing was contrary to statements in his medical records. Two separate records from different facilities showed that Adams had used marijuana and alcohol roughly within fourteen months of the hearing.

Adams requested review from the SSA's Appeals Council, but it denied the request. He then sought review in the U.S. District Court for the Eastern District of Oklahoma. A magistrate judge recommended affirming the SSA's decision, and the district court adopted that recommendation over Adams's objections.

Adams now appeals to this Court alleging three points of error: (1) the ALJ improperly assessed his RFC by failing to address both his reaching limitations related to a rotator-cuff injury and his mental impairments; (2) the ALJ erred in

finding he could perform other work; and (3) the ALJ improperly evaluated his credibility.

## DISCUSSION

"We review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). Under the Act, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A). Regulations implementing the Act define

a five-step process for evaluating a disability claim.  *Fischer-Ross v. Barnhart*,

431 F.3d 729, 731 (10th Cir. 2005) (summarizing the five steps).[1]

## I. RFC

Adams argues that the ALJ failed to include any reaching restrictions related

to his rotator-cuff injury in the RFC formulation, which occurs at step four of the

familiar five-step sequential evaluation process.  Adams points out that the ALJ

considered his right-rotator-cuff injury as a severe impairment at step two of the

process.

The problem with this argument, however, is that the record indicates no

functional limitation as a result of Adams's shoulder injury.  Indeed, Dr. Mark

Fossey and Dr. Bruce Markman examined Adams, albeit for issues unrelated to his

---

[1]    The five steps are:

> Step one requires a claimant to establish she is not engaged in
> "substantial gainful activity." Step two requires the claimant to establish
> she has a "medically severe impairment or combination of
> impairments." Step three asks whether any "medically severe
> impairment," alone or in combination with other impairments, is
> equivalent to any of a number of listed impairments so severe as to
> preclude "substantial gainful employment." If listed, the impairment is
> conclusively presumed disabling. If unlisted, the claimant must establish
> at step four that her impairment prevents her from performing work she
> has previously performed. If the claimant is not considered disabled at
> step three, but has satisfied her burden of establishing a prima facie case
> of disability under steps one, two, and four, the burden shifts to the
> Commissioner to show the claimant has the residual functional capacity
> (RFC) to perform other work in the national economy in view of her
> age, education, and work experience.

*Fischer-Ross*, 431 F.3d at 731 (internal citations omitted).

shoulder, and reported that he had good range of motion in his extremities. And for his last job, Adams reported that he reached for ten hours each day and that he left that job not because of a reaching problem, but because he threatened a coworker. Additionally, Adams testified that he moves furniture around and throws a softball, presumably, with his dominant right arm.

An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). We conclude that the ALJ did not err by omitting Adams's shoulder injury from his RFC assessment.[2]

Adams contends that the ALJ also erred by not formulating an RFC that accounts for his APD. First, we note that Adams's APD was initially diagnosed three years before his claimed disability onset date. And he does not cite a repeat diagnosis following his onset date. Nevertheless, the ALJ considered that Adams "has moderate difficulties" in social functioning. Aplt. App., Vol. II at 14. He noted, however, that Adams has maintained a five-year relationship with a friend and former supervisor, enjoys the loyalty of his wife and family, has family or friends over to his house for social functions, and plays softball with others. These facts belie Adams's

---

[2] Because we find that the ALJ did not err in not addressing Adams's alleged reaching limitations in the RFC, we need not reach his argument that the ALJ erred in the step-five finding that he could perform other work without addressing the alleged reaching limitations.

assertion that his "tendency for becoming 'easily stressed' and physically angry" precludes all competitive work. Aplt. Opening Br. at 19.

In the RFC formulation, the ALJ limited Adams to only "incidental contact with the general public." Aplt. App., Vol. II at 16. We conclude that there is substantial evidence in the record supporting that degree of limitation on Adams's social-functioning ability.[3]

## II. Credibility

In determining Adams's RFC, the ALJ found him not credible to the extent his "statements concerning the intensity, persistence and limiting effects of [his] symptoms" conflicted with the RFC determination. *Id.* at 19. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to that evidence." *Adams*

---

[3] Adams also claims that the ALJ failed to formulate an RFC consistent with his depressive phases, agoraphobia, "hyperactive" cleaning episodes, and intolerance to stress. Aplt. Opening Br. at 15–17. But Adams does not cite any medical evidence showing that these issues pose any functional limitations beyond those already included in the ALJ's RFC determination. And "we may neither reweigh the evidence nor substitute our judgment for that of the agency." *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (internal quotation marks omitted).

To the extent Adams attacks the limitations included in the ALJ's hypothetical question to the VE, we note that those limitations mirror the ALJ's RFC determination, and we have rejected Adams's challenges to that determination. Consequently, we need not revisit Adams's arguments.

*ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (alteration and internal quotation marks omitted).

Initially, we note that the ALJ recounted the medical record evidence that cast doubt on Adams's testimony concerning his use of alcohol and marijuana and his attempts at obtaining mental-health treatment. Adams maintains, however, that the ALJ should not have relied on his "noncompliance with mental medical health treatment and use of marijuana and alcohol as evidence that he was not credible." Aplt. Opening Br. at 20. He argues that individuals with bipolar disorder and APD are unlikely to "comply with medication regimens" and may abuse alcohol or drugs. *Id.* In support of that argument, he cites *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009). In *Pate-Fires*, an ALJ found that the claimant's "failure to seek regular, frequent treatment and failure to follow the medical treatment recommended by her treating sources significantly undermined her credibility." *Id.* at 945. The Eighth Circuit rejected that finding as a basis on which to conclude the claimant was not disabled because "the evidence overwhelmingly demonstrate[d] [that the claimant's] noncompliance was attributable to her mental illness." *Id.* at 946.

Here, in contrast, Adams fails to cite any evidence that his use of alcohol and marijuana and his intermittent pursuit of mental-health treatment were the result of his mental illnesses. Additionally, unlike the ALJ in *Pate-Fires*, the ALJ in Adams's case discounted his credibility because his testimony conflicted with medical records. It was proper for the ALJ to consider the inconsistencies between Adams's hearing

- 9 -

testimony and the information contained in the medical records. *See* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

We conclude that the ALJ's credibility finding is supported by substantial evidence.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge