FILED
United States Court of Appeals
Tenth Circuit

August 15, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAMELA J. BALES,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 13-5147
(D.C. No. 4:12-CV-00601-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

Pamela J. Bales appeals from a district court order that affirmed the

Commissioner's denial of her applications for disability insurance benefits (DIB) and

supplemental security income (SSI). She argues that the ALJ (1) failed to properly

consider the medical-opinion evidence; (2) failed to consider the combined effect of

her impairments; (3) failed to consider the specific requirements of her past relevant

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

work; (4) failed to consider the effects of her obesity on her other impairments; and (5) performed a flawed credibility analysis.

We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Ms. Bales has a high-school education and has worked as a make-ready porter, a wiring/knotting machine operator, and an x-ray machine/automatic developer. She alleged that she became unable to work in September 2005, at the age of forty-six, due to anxiety attacks and depression.

An administrative law judge (ALJ) denied Ms. Bales' applications for benefits and the Appeals Council denied review. Ms. Bales filed suit, however, and the district court reversed and remanded for further proceedings because the ALJ failed to discuss relevant medical-opinion evidence.

Following a hearing in which Ms. Bales and a vocational expert (VE) testified, the ALJ again found that she was not disabled. In doing so, the ALJ noted that Ms. Bales suffers from the following severe impairments: history of a hernia after undergoing a hysterectomy; hypothyroidism; non-insulin dependent diabetes mellitus; hypertension; obesity; bipolar disorder; and anxiety disorder. Given these impairments, the ALJ found that Ms. Bales had a residual functional capacity (RFC) for medium work, limited to simple, routine tasks involving no significant public interaction and only superficial and incidental interaction with co-workers and

supervisors.  Consequently, the ALJ found that Ms. Bales could perform her past relevant work, and alternatively, that there were other jobs in the national economy (press-machine operator and bakery worker) that she could perform.

Ms. Bales unsuccessfully challenged that decision before the Appeals Council and the district court before appealing to this court.

## DISCUSSION

### I.  Standards of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."  *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Thus, "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's."  *Id.* (internal quotation marks omitted).

### II.  Medical Opinions

Ms. Bales argues that the ALJ failed to properly consider a May 2008 mental-impairment questionnaire from her treating physician, Dr. Bryan Touchet.  Dr. Touchet did not fill out the form.  Rather, a "[c]linician advocated for [Ms. Bales] by completing the paperwork required for her lawyer" and then "staffed with

[Dr. Touchet] to obtain his signature." Aplt. App., Vol. V at 1164. The form indicates that Ms. Bales is markedly limited in her daily living activities; has frequent deficiencies of concentration, persistence or pace; is extremely limited in social functioning; is likely to miss more than three days of work each month; and has a Global Assessment of Functioning (GAF) score of 55.

Ms. Bales is correct that a treating physician's opinion is generally entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). But "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1527(c)(4) (stating in the context of a DIB application that "the more consistent an opinion is with the record as a whole, the more weight . . . will [be] give[n] to that opinion"); *id.* § 416.927(c)(4) (same regarding an SSI application).

The ALJ gave Dr. Touchet's opinions "limited weight" for several reasons. Aplt. App., Vol. IV at 656. In particular, the ALJ noted that Dr. Touchet did not complete the form and he had reported earlier that Ms. Bales had no more than minimal or moderate limitations. Indeed, the ALJ observed that the GAF rating of 55 indicated only moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). Finally, the ALJ observed that Ms. Bales' symptoms improved when she was

- 4 -

taking her medications and that she had reported being able to go out to do her laundry. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (stating that ALJ properly rejected treating physician's opinion because, among other things, the opinion was "not supported by [the physician's] own records which indicate[d] improvement and stabilization on medications").

We conclude that substantial evidence supports the ALJ's decision to discount Dr. Touchet's opinion on the May 2008 form as to the severity of her limitations. The inconsistencies between the form and the other record evidence warranted giving Dr. Touchet's opinions on the form less than controlling weight, and we may not reweigh that evidence. *See Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (brackets and internal quotation marks omitted)).

Next, Ms. Bales argues that the ALJ failed to discuss the report of Dr. Sri Reddy, who examined her for Oklahoma's Disability Determination Division. Dr. Reddy found that Ms. Bales' reflexes were absent from her ankles, that her senses were "decreased to light touch in both feet," and that hyperextension of her lumbar spine caused pain. Aplt. App., Vol. III at 364. According to Ms. Bales, these "findings contradict the ALJ's RFC for medium work." Aplt. Br. at 24.

While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that an ALJ "discuss every piece of evidence."

- 5 -

*Mays*, 739 F.3d at 576 (internal quotation marks omitted). Ms. Bales fails to explain how Dr. Reddy's findings have any bearing on her functional limitations, such that the ALJ should have specifically discussed those findings in setting her RFC for medium work. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (stating that a medical condition need not be considered where the claimant has failed to identify resulting functional limitations that would affect the ALJ's analysis); *see, e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (stating that the "mere presence" of a medical condition is not enough; rather, that condition, "alone or in combination with other impairments, must render [the] claimant unable to engage in any substantial gainful employment" (brackets and internal quotation marks omitted)). Thus, Ms. Bales has not established error in the ALJ's failure to discuss Dr. Reddy's findings.

Ms. Bales next argues that the ALJ failed to properly consider the opinions of state agency medical consultants who noted on Psychiatric Review Technique (PRT) forms that she has moderate limitations in concentration, persistence or pace. These limitations, she argues, should have been incorporated into her RFC because they would interfere with her work productivity.

In conducting the step-3 analysis,[1] the ALJ accepted that Ms. Bales is moderately limited in concentration, persistence, or pace. But the ALJ also

---

[1] The five-step sequential evaluation process involves the following serial considerations: (1) whether the claimant is currently engaged in any substantial

(continued)

determined, based on her household routines and the reports of her mental health providers, that she could "sustain focused attention sufficiently long to permit timely and appropriate completion of tasks commonly found in work settings." Aplt. App., Vol. IV at 650. Indeed, Ms. Bales testified that she prepares meals, does laundry, washes dishes, and regularly maintains her personal hygiene. And Ms. Bales' mental-healthcare providers, including Dr. Touchet, have characterized her "[a]ttention/concentration [as] adequate." *See, e.g.*, *id.*, Vol. III at 422; *id.*, Vol. IV at 583; *id.*, Vol. V at 1193. Thus, the ALJ concluded that Ms. Bales' difficulty with concentration, persistence, or pace failed, both singularly and in combination with other impairments, to meet or medically equal a listed impairment.[2]

As the ALJ proceeded to step four, she noted that the limitations found at step three are not an RFC assessment, which "requires a more detailed assessment." *Id.*, Vol. IV at 650; *see also* SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996) ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC

_____

gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Prior to step four, the ALJ must assess the claimant's RFC, *see id.* §§ 404.1520(a)(4), 416.920(a)(4), which is the most a claimant can do despite her limitations, *see id.* §§ 404.1545(a)(1), 416.945(a)(1). The claimant has the burden of proof to show she is disabled through step four; and at step five, the burden shifts to the Commissioner to show there are other available jobs in the economy. *See Lax*, 489 F.3d at 1084.

[2]     Ms. Bales does not challenge the ALJ's step-three conclusion.

assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings."). Indeed, the PRT forms completed by the medical consultants contain only broad categories of limitation, whereas the mental RFC forms completed by the same consultants break down those particular categories into more discrete and focused functional abilities.

In assessing Ms. Bales' RFC, the ALJ relied on the consultants' mental RFC opinions, incorporating the most restrictive mental RFC limitations suggested: the performance of only simple, routine tasks while interacting only insignificantly with the public and only superficially and incidentally with coworkers and supervisors. *Compare id.*, Vol. IV at 651 (ALJ's RFC assessment), *with id.*, Vol. II at 277 (Dr. R. Smallwood's mental RFC assessment that Ms. Bales can "carry out simple and possibly some more complex instructions under routine supervision"); *id.*, Vol. III at 385 (Dr. Burnard Pearce's mental RFC assessment that Ms. Bales can "perform simple and some complex tasks," "adapt to a work situation," and "relate to others on a superficial work basis"); *and id.*, Vol. V at 1081 (Dr. Deborah Hartley's mental RFC assessment that Ms. Bales can "perform simple tasks with routine supervision," "relate to supervisors and peers on a superficial work basis," and "adapt to a work situation," but "cannot relate to the general public"). The ALJ also

thoroughly detailed how the medical evidence and Ms. Bales' testimony translated to her RFC.

Under these circumstances, we see no error in the ALJ not importing Ms. Bales' limitations identified generally on the PRT forms into the more detailed RFC determination. More specifically, we conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case. And, as we discuss throughout this order and judgment, Ms. Bales has failed to establish that her RFC is unsupported by substantial evidence.[3]

### III.  Combined Effect of Impairments

An ALJ must "consider the combined effect of all of the [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of such severity" as to warrant an award of benefits. 42 U.S.C.

---

[3]    We do not believe that *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007), requires that an ALJ's RFC determination mirror the step-three findings. *Frantz* reversed the Commissioner's decision because the ALJ ignored evidence that would support a finding of disability while focusing on evidence that would support the contrary finding. This court remanded so the Commissioner could consider "an inconsistency" between the ALJ's step three and step four findings. *Id.* at 1303 n.3. But *Frantz* did not hold that an ALJ is necessarily bound by his or her step three findings when fashioning a claimant's RFC. The court did not discuss the issue. Similarly, *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), does not hold that step three and step four findings must be the same. Rather, that case involved the issue of "how much . . . discussion of a non-severe impairment [found at step two] is required at step four." *Id.* at 1064.

§ 423(d)(2)(B); *see also Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (explaining that when "assessing [a] claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*").

Ms. Bales contends that the ALJ failed to consider that she suffers from carpal tunnel syndrome, migraines, fatigue, insomnia, high cholesterol, gastroesophageal reflux disease, and left-shoulder-impingement syndrome. But the ALJ noted that, when assessing a claimant's RFC, "all of the claimant's impairments, including impairments that are not severe" must be considered. Aplt. App., Vol. IV at 647. Further, the ALJ stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," *id.* at 651, and that she had "careful[ly] consider[ed] . . . all of the evidence" in finding Ms. Bales not disabled, *id.* at 646.

"[A]n ALJ is not required to discuss every piece of evidence." *Mays*, 739 F.3d at 576 (internal quotation marks omitted). And when an "ALJ indicates [s]he has considered all the evidence[,] our practice is to take the ALJ at [her] word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted). Here, the ALJ thoroughly discussed the medical evidence, and there is no indication that, despite not expressly mentioning Ms. Bales' other medical problems, the ALJ did not take them into account.

And even if the ALJ failed to account for all of Ms. Bales' medical problems, Ms. Bales does not identify how any of these conditions, either individually or in combination, affected her functioning during the time she claims she was disabled. *See* 20 C.F.R. § 404.1512(c) (requiring that a claimant "provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled"). In that case, any error would be harmless. *Cf. Mays*, 739 F.3d at 578-79 ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of [RFC].").

## IV. Past Relevant Work (PRW)

The ALJ found that Ms. Bales could return to her past jobs as a make-ready porter, a wiring/knotting machine operator, and an x-ray machine/automatic developer. Ms. Bales argues that this finding is flawed because "[t]he ALJ failed to perform a proper analysis of [her] PRW and the physical and mental demands of that work." Aplt. Opening Br. at 31.

Ms. Bales is correct that an ALJ "must determine the physical and mental demands of the claimant's [PRW]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). But the ALJ did just that. At the hearing, the ALJ asked the VE to recount Ms. Bales' PRW by "job title, exertional level, skill level, and <u>DOT</u> code." Aplt. App., Vol. IV at 692. The VE discussed Ms. Bales' past jobs as she claimed to have performed them, and then opined, when

- 11 -

further questioned by the ALJ, that a hypothetical claimant with Ms. Bales' RFC could perform all of her past jobs, except her job as a stocker. The ALJ relied on that testimony and found that Ms. Bales could perform her PRW. Specifically, the ALJ noted that Ms. Bales' past jobs were "unskilled positions, which [she] performed at the light exertional level." *Id.*, Vol. IV at 657. The ALJ concluded by noting the VE's response to the hypothetical questions and by "find[ing] that [Ms. Bales] is able to perform her [PRW] as actually performed." *Id.* We conclude that the ALJ's analysis of Ms. Bales' PRW was sufficient. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996) (observing that "while the ALJ may rely on information supplied by the VE at step four, the ALJ [herself] must make the required findings on the record, including [her] own evaluation of the claimant's ability to perform . . . past relevant work"); *see, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (finding no error where the ALJ relied on the VE's testimony in conducting the PRW analysis).[4]

## V. Obesity

Ms. Bales asserts that the ALJ failed to consider the effects of her obesity on her other impairments. The ALJ found that Ms. Bales' obesity was a severe

---

[4] Even if the ALJ insufficiently analyzed Ms. Bales' PRW, that error would be harmless. The ALJ made the alternative determination that there are other jobs in the national economy that Ms. Bales can perform, and we have rejected all of Ms. Bales' other challenges to the ALJ's decision. *See Getch v. Astrue*, 539 F.3d 473, 481 (7th Cir. 2008) (observing that an alternative step-five analysis might render harmless an error during the step-four PRW analysis).

impairment and she stated that she had considered it "with [Ms. Bales'] other impairments" in setting her RFC at no "more restrictive than medium exertional activity." Aplt. App., Vol. IV at 654. In support, the ALJ cited medical evidence showing that Ms. Bales had normal physical exams in 2010 and 2011.

Ms. Bales seems to contend that despite the ALJ's obesity discussion, the ALJ could not have adequately considered obesity because "[i]f the ALJ had considered the effects of obesity, she would have assigned a sedentary work level." Aplt. Opening Br. at 34. But she cites no medical evidence to support her contention. Instead, Ms. Bales appears to take issue with the ALJ's weighing of the medical evidence. "[B]ut we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

## VI. Credibility

It is well-established that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (citation, brackets, and internal quotation marks omitted).

Ms. Bales faults the ALJ for not identifying "which of [her] particular statements were true and untrue." Aplt. Opening Br. at 35-36. But an ALJ is not required to "identif[y] any specific incredible statements," so long as the ALJ

- 13 -

"indicat[es] to what extent [s]he credited what [the claimant] said when determining the limiting effect of [the claimant's] symptoms." *Keyes-Zachary*, 695 F.3d at 1170.

Here, the ALJ did just that. She (1) summarized Ms. Bales' testimony regarding her daily activities; (2) cited function reports that indicated Ms. Bales did not always need someone to accompany her to the store, doctor appointments, and the laundromat; and (3) cited a progress note in which Ms. Bales told Dr. Touchet that she could go out by herself to do laundry and that she could go grocery shopping, but needed her mother for transportation. The ALJ determined, therefore, that "[Ms. Bales] has described daily activities that are not limited to the extent one would expect, given [her] complaints of disabling mental and physical symptoms and limitations." Aplt. App., Vol. IV at 655. Consequently, the ALJ's credibility determination is closely and affirmatively linked to substantial evidence.[5]

---

[5]  Ms. Bales contests the ALJ's observation that she has not always complied with her medication regimen, but that when she has, her symptoms improved. The ALJ did not purport to rely on Ms. Bales' noncompliance as the reason for denying DIB and SSI benefits. *Cf. Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) (detailing the requisite analysis when an ALJ denies benefits solely because a claimant has refused to follow prescribed treatment). Rather, the "ALJ properly considered what attempts [Ms. Bales] made to relieve [her] [symptoms] . . . in an effort to evaluate the veracity of [her] contention that [her symptoms were] so severe as to be disabling." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Ms. Bales contends that she was noncompliant "due to lack of funds or transportation." Aplt. Opening Br. at 37. But the ALJ found that indigent care was available and that Ms. Bales in fact "was receiving medication assistance through Family and Children Services." Aplt. App., Vol. IV at 653. Ms. Bales does not dispute this finding.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge