**Armando Sippreano HOUSTON,**
**Plaintiff,**

v.

**Carolyn W. COLVIN, Commissioner of the Social Security Administration, Defendant.**

**Civ. No. 14–1015 SCY**

United States District Court,
D. New Mexico.

Filed March 30, 2016

Gary J. Martone, Feliz Marisol Martone, Sarah L. Maestas Barnes, Martone Law Firm, P.A., Albuqerque, NM, for Plaintiff.

Chad Troop, Noah Schabacker, Social Security Administration, Office of General Counsel, Denver, CO, Manuel Lucero, US Attorney's Office, District of New Mexico, Albuquerque, NM, for Defendant.

## MEMORANDUM OPINION AND ORDER

STEVEN C. YARBROUGH, UNITED STATES MAGISTRATE JUDGE

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand the Social Security Administration (SSA) Commissioner's decision to deny Plaintiff disability insurance benefits. ECF No. 20. Having considered the parties' briefing, the administrative record, the relevant law, and being otherwise fully advised, the Court finds Plaintiff's arguments in favor of reversal unpersuasive and, will, therefore, **deny** Plaintiff's motion.

### I. BACKGROUND

#### A. Plaintiff's Medical and Work History

Plaintiff Armando Houston is a 38 year old male who alleges disability on the basis of degenerative disc disease, post-traumat-ic stress disorder, anxiety, and depression. AR 278. He claims that he initially hurt his back in 1997 when he fell on a rock. AR 27, 303, 355. He reports that in 2002 he worked as a cook in a fast food restaurant for about eight months and that this was the job he had prior to going to prison. AR 51. He reports that he aggravated his back injury in 2007 while deadlifting more than 300 pounds. AR 27, 303, 355. After being released from prison, he worked for about a year and a half as a cashier at a convenience store. AR 46, 49–50, 296, 303–04. He was terminated from this employment for reasons unrelated to medical issues. AR 50. Although Plaintiff's employment was terminated for non-medical reasons, Plaintiff claims that the onset of his disability coincides with the date of his termination—December 8, 2010. AR 22.

#### i. Plaintiff's History of Back Pain

On February 24, 2011, Plaintiff was admitted to the emergency room at Christus St. Vincent Medical Regional Center with acute back pain after moving furniture. AR 343, 348.

On March 8, 2012, Dr. Regina Valencia, M.D. evaluated an X-ray of Plaintiff's spine. The X-ray indicated that Plaintiff had disc space narrowing at vertebrae L–5–S–1, but Dr. Valencia observed no compression fracture or subluxation of that area and stated that her impression was that Plaintiff's spine was stable. AR 302, 366–68.

On March 11, 2012, Dr. Saphu Pradhan, M.D. performed a disability determination examination of Plaintiff. AR 303–06. Dr. Pradhan noted that Plaintiff had no difficulty with ambulation and had a generally normal extremity range of motion. However, Dr. Pradhan also concluded that Plaintiff had "objective limitation to anterior flexion and extension of the lumbar

spine, as well as straight leg raises in the supine position" and "tenderness to palpitation in the low thoracic spine and mid lumbar (L) spine region ... [which] may prohibit him from standing or walking for longer than an hour at a time." AR 16–10 at 306. He did not observe any neurological issues. *Id.* He also observed that Plaintiff was able to follow directions without losing his concentration. AR 306.

On March 26, 2012, Plaintiff saw Dr. Lyle Amer, M.D., complaining of lower back pain after lifting a 305 pound weight. Dr. Amer diagnosed him with gastroesophageal reflux disease, back pain, and degenerative disc disease. AR 308.

On March 27, 2012, Dr. Joan Crennan, M.D., found that Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 26 pounds, stand or walk for 6 of 8 hours of a day, had unlimited ability to push and pull, but could not frequently stoop or climb ladders, ropes, or scaffolds. AR 66–69. She noted that while Plaintiff complained of chronic back pain, he was not taking pain medication for this condition and had received no other treatment for it. AR 70. She stated that his lumbar spine X-rays indicated that he could not perform heavy work and that his RFC was "medium." *Id.*

On May 30, 2012, Plaintiff again saw Dr. Amer, who noted that Plaintiff's neck muscles were tender, Plaintiff had difficulty moving his neck, and his right shoulder was stiff. AR 308. On July 30, 2012, Plaintiff again returned to Dr. Amer complaining of chronic lower back pain. AR 307.

On October 14, 2012, Dr. Raúl Neftali Young–Rodriguez, M.D., performed a disability determination examination of Plaintiff. AR 324–327. He stated that Plaintiff reported being able to stand for an hour at a time, or a total of four hours non-consecutively over an eight hour day, walk for an hour at a time on level ground, sit for two hours at a time, and lift ten pounds. AR 325. Dr. Young–Rodriguez observed that Plaintiff could ambulate slowly, and was "a little uncomfortable" keeping his back straight and stated that "[t]here is clinical medical evidence noted today to support moderate limitation of activity involving the lumbar spine." AR 325–26.

On November 6, 2012, Dr. Eileen Brady, reviewing Dr. Crennan's assessment, affirmed it. AR 97.

On March 30, 2013, Plaintiff was admitted to the emergency room at Christus St. Vincent Medical Regional Center after 12 hours of "strenuous work" because he was experiencing symptoms of nausea, vomiting, neck, hip, and back pain, and dizziness, as well as dehydration. AR 335–36.

On January 22, 2014, Dr. Hal Hankinson, M.D. met with Plaintiff regarding his back pain. AR 355–57. Plaintiff reported muscle spasms and pain radiating down his hips and the backs of his thighs. AR 355. Dr. Hankinson noted that while Plaintiff did not appear to have either a neurological deficit or radicular pain, he could not give Plaintiff a diagnosis without a MRI. AR 357.

*ii. Plaintiff's Psychological History*

On December 21, 2011, at an appointment at Anasazi Medical Associates, Plaintiff reported back pain, depression, anxiety, insomnia, and mood swings. AR 292–294

Dr. Michael Gzaskow, M.D., performed a disability determination examination of Plaintiff on March 5, 2012. AR 296–99. He noted that Plaintiff appeared mildly depressed but was cooperative and did not evince any "organic or psychotic thought pathology." AR 298. Plaintiff's memory appeared intact and his insight was "fair to good." AR 299. He diagnosed Plaintiff

with PTSD, depressive disorder NOS, and adult attention deficit/hyperactivity disorder. *Id.* Dr. Gzaskow concluded that Plaintiff had a difficult time relating to others based on his PTSD issues but that he could attend to simple tasks and understand directions in a structured/supportive environment. *Id.*

On March 9, 2012, Dr. Renate Wewerka, Ph.D., determined that Plaintiff had moderate limitations in a variety of social and work interactions. He further opined that "Claimant can understand, remember and carry out detailed, but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR 70–71.

On August 6, 2012, Donna Romero, LISW, LCSW, met with Plaintiff, who reported that he needed assistance 1–2 times per week because he had difficulty getting out of bed. AR 315. Ms. Romero found that Plaintiff displayed significant depression, PTSD, and bipolar disorder. She assessed a GAF score of 40. AR 317.

On August 16, 2012, at Presbyterian Medical Services, Plaintiff was observed to have normal speech, appearance, and thought processes. AR 319–20. He was diagnosed with PTSD, major depressive disorder, and was assessed a GAF score of 50. AR 320. He was prescribed Paxil for his depression. AR 318.

On September 13, 2012, Dr. Dilip Rajesh, M.D., examined Plaintiff, and diagnosed him with PTSD and major depressive disorder. AR 321. Plaintiff's mental status appeared normal with his impulse control, judgment, insight, and reasoning all considered "fair" and gave him a GAF score of 54. AR 321–22.

On February 28, 2014, Plaintiff met with Susan Heumiller LPCC. She noted that he was cooperative and considered his impulse control, judgment, insight, and reasoning to be "fair." She assigned him a GAF score of 50. AR 359–63.

### B. Procedural History

Plaintiff filed his Title II applications for disability insurance benefits and supplemental social security income on January 24, 2012. AR 20. His claims were denied on March 27, 2012 and his request for reconsideration denied on November 8, 2012. *Id.* Plaintiff requested a hearing on November 21, 2012. *Id.* A video hearing was held on March 12, 2014. *Id.* On May 28, 2014, the ALJ issued his decision denying Plaintiff's request for benefits. AR 20–31. The Appeals Council denied Plaintiff's appeal of the ALJ's decision on September 11, 2014. AR 1.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determin-

able physical or mental impairment ... or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called Claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, Claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer–Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

**B. *Standard of Review***

 A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800–01 (10th Cir.1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir.2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence ... a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir.2004)).

 Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996). As a baseline,

the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009–10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III. ANALYSIS

Plaintiff argues that the ALJ erred: (1) in failing to develop and adequately consider Plaintiff's statements about his disability; (2) in failing to explain why he assessed Plaintiff with greater limitations than did non-examining state agency physicians; (3) in implicitly finding—through a determination that Plaintiff could perform light exertional work—that Plaintiff could walk or stand for more than an hour at a time; (4) in giving little weight to the opinion of Dr. Gzaskow; (5) in not recontacting Dr. Young–Rodriguez for further information about functional limitations; and (6) by not making findings regarding the mental and physical demands of Plaintiff's past relevant work. ECF No. 20. The Commissioner responds that the ALJ's findings are all properly grounded in substantial evidence and that the ALJ correctly determined that Plaintiff could return to his past relevant work. ECF No. 24.

### A. The ALJ Adequately Developed and Considered Plaintiff's Statements

■ Plaintiff argues that the ALJ failed to adequately develop and consider statements he made, and would have made, about his limitations. He argues that the ALJ ignored Plaintiff's statements in his Function Report pertaining, among other things, to limitations with taking care of the children, making meals for the family, cleaning, being around people he does not know, and being under stress. ECF No. 20 at 7. He further argues that the ALJ focused on some of Plaintiffs' statements, such as digging outside, while failing to acknowledge the whole story—that Plaintiff did this work with five other men and ended up in the hospital.

■ Plaintiff's arguments that the ALJ did not adequately consider all of the subjective statements he made, or might have made, are without merit. While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that an ALJ "discuss every piece of evidence." *Mays v. Colvin,* 739 F.3d 569, 576 (10th Cir.2014) (internal quotations omitted). The ALJ adequately developed information from Plaintiff. The ALJ cited extensively to records that are replete with statements Plaintiff made to various medical providers about his medical condition. The ALJ personally questioned Plaintiff during his March 12, 2014 hearing and gave Plaintiff the opportunity to discuss his medical condition at that hearing. *See, e.g.,* AR 52 (asking Plaintiff to tell him about problems he has being around people). The ALJ also gave Plaintiff's representative at the hearing an opportunity to provide relevant information about Plaintiff and to ask Plaintiff questions about his limitations. AR 4345, 53–54. A review of the ALJ's decision demonstrates that the ALJ adequately considered the record, including subjective statements Plaintiff provided. As for Plaintiff's admission that he spent more than 12 hours digging a trench with a shovel, the Court finds that whether others helped him in this task is irrelevant because Plaintiff stated that he helped dig the trench, which he described as "strenuous work for over 12 hours." AR 335.

**B. The ALJ Committed No Error In Concluding That Plaintiff Could Not Perform Work At The Level Non–Examining State Physicians Opined He Could Perform**

■ Plaintiff argues that the ALJ should have provided a narrative discussion to justify why he restricted Plaintiff to light work when non-examining physicians Dr. Brady and Dr. Crennan found he "could sustain heavy work" and had a residual function capacity to perform medium work. *See* AR 8. The Court agrees with the Commissioner that an "ALJ does not commit reversible error by electing to temper an adverse medical source opinion in the claimant's favor, as the ALJ did in the [sic] case by limiting plaintiff to light, rather than medium, work." ECF No. 24 at 8. As the Tenth Circuit stated in *Chapo v. Astrue,* "[i]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir.2012). Thus, even assuming the ALJ did not explain why he found Plaintiff only capable of light, as opposed to medium or heavy work, this failure would not constitute reversible error.

**C. The ALJ's Physical Limitation RFC Is Supported By Substantial Evidence**

■ Plaintiff asserts that the ALJ improperly assessed him with a limitation of light exertional work. ECF No. 20 at 4–9. In relevant part, the ALJ found that Plaintiff could do light work as defined by 20 C.F.R. §§ 404.1567(b)[1] and 416.967(b)[2] except that he was excluded from work that involved climbing ladders, ropes, or scaffolds, could only occasionally climb ramps and stairs, could frequently stoop, and had to avoid concentrated exposure to extreme temperatures, operating, moving or hazardous machinery, and unprotected heights. AR 25. The ALJ therefore found Plaintiff capable of lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, undertaking a job with "a good deal of walking or standing," work involving mainly sitting with some pushing and pulling, as well as sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

■ Plaintiff understandably focuses much of his argument on the alleged discrepancy between Dr. Pradhan's comment that Plaintiff may be prohibited from

**1.** This CFR defines light work as follows: "Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

**2.** This CFR defines light work as follows: "Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

standing or walking for more than an hour at a time and the definition of light work that contemplates "a good deal" of walking or standing. ECF No. 20 at 10. Specifically, Dr. Pradhan determined that Plaintiff's "objective limitation to anterior flexion and extension of the lumbar spine, as well as straight leg raises in the supine position" and "tenderness to palpitation in the low thoracic spine and mid lumbar (L) spine region ... may prohibit him from standing or walking for longer than an hour at a time." AR 16–10 at 306. Plaintiff interprets Dr. Pradhan as limiting his standing and walking to no longer than an hour at a time which, he argues, is at odds with the ALJ's assessment that Plaintiff is able to do light work without a walking restriction, given that light work can include "a good deal of walking or standing." When an ALJ does not accept evidence that contradicts his finding, the ALJ must provide an explanation.

As an initial matter, the Court notes that Dr. Pradhan did not definitively determine that Plaintiff could not walk or stand for more than an hour at a time. Instead, he found that Plaintiff's back issues "*may* prohibit him from standing or walking for more than an hour at a time." AR 16–10 at 306 (emphasis added). In considering the whole record, the ALJ was entitled to weigh Dr. Pradhan's indefinite conclusion against the more definite conclusions of other doctors, as set forth more fully below.

The ALJ specifically acknowledged that Dr. Pradhan noted that Plaintiff's back issues "*might* prohibit him from standing or walking for longer than an hour at a time." AR 27 (emphasis added). He then noted that, although Plaintiff told Dr. Pradhan in March 2012 that he could neither stand, walk, nor sit for more than fifteen minutes at a time, Plaintiff told Dr. Rodriguez [in October 2012] that he could stand for an hour at a time, stand for four hours during an eight hour day, walk on level ground for an hour, and sit for two hours. AR 28–29. In addition to pointing out this inconsistency, the ALJ further concluded that Dr. Pradhan's statements were contradicted by other evidence. Specifically, the ALJ noted that, on March 2013, Plaintiff went to the emergency room for dehydration after having been outside for over twelve hours doing strenuous work—digging a trench with a shovel after a water main broke at his girlfriend's house.[3] AR 29. Plaintiff complains about the ALJ's reliance on this fact, asserting that activities which "land" you in the hospital should not be considered because those activities cannot be done on a regular basis. ECF No. 20 at 8.

Back pain, however, does not appear to have served as the primary motivation for Plaintiff's hospital visit. When the ALJ asked Plaintiff to tell him what happened in connection with the work he did in March 2013, Plaintiff explained, "I went to lay down and about 1:00 in the morning I started waking up wanting to throw up and sweating uncontrollably, the lights were really bright, felt really shaky, like uncontrollable shaking and after that I kind of was just scared and asked for help ... and they called ... the ambulance." AR 51. While, among many other issues,[4] Plaintiff reported back pain during his hos-

---

**3.** Plaintiff notes that he did not dig this trench alone. As previously discussed, whether others also engaged in strenuous work, however, is irrelevant—Plaintiff states that he was digging a trench, which he described as "strenuous work for over 12 hours."

**4.** The intake form also indicates that Plaintiff complained of generalized weakness, nausea/vomiting, sweating, neck pain, dizziness, blackout/falling asleep, back pain, and hip pain. AR 335.

pital visit, the records do not indicate he received any significant treatment or followed up with a subsequent visit as he was directed to do if he experienced further problems. AR 349.[5] Thus, it appears that, even after more than twelve hours of digging with a shovel, general exhaustion, and not back pain, landed Plaintiff in the hospital. Furthermore, even if more than twelve hours of digging, not surprisingly, caused Plaintiff back pain, the ALJ has never suggested that Plaintiff is capable of digging trenches for a living. Instead, the Plaintiff's RFC limits him to performing the light exertional positions of fast food cook and convenience store cashier that he previously performed.[6] AR 31.

In finding that Dr. Pradhan's report was inconsistent with Plaintiff's activities "as reported elsewhere" (AR 29), the ALJ also relied on Plaintiff's ability to work as a cashier after his alleged back injury occurred. The ALJ stated, "the claimant attributes his chronic back pain to falling on a rock about 15 years ago, and lifting a 300–pound weight while weight lifting in prison in 2007, but his work as a gas station cashier occurred after those incidents. Although he alleges disability beginning on December 8, 2010, the earliest medical record is dated February 24, 2011, when he presented to the emergency room complaining of back pain after moving furniture." AR 27.

■ The ALJ also justified his decision to give Dr. Pradhan's opinion little weight on the basis that Dr. Pradhan was "relying in part on [Plaintiff's] statements to him regarding functional limitations" which were inconsistent with Plaintiff's statements to Dr. Rodriguez and "[Plaintiff's] activities as reported elsewhere." AR 29. Plaintiff objects to this reasoning, arguing that the ALJ was not permitted to give Dr. Pradhan's opinion less weight on the basis that Dr. Pradhan relied on Plaintiff's subjective statements. ECF No. 20 at 10–11. Plaintiff's support for his argument, however, comes from a case dealing with psychological issues, not physical issues. Plaintiff correctly points out that a person's subjective statements are an important part of a psychological evaluation because such an evaluation inherently relies on these statements. ECF No. 20 at 11. Physical evaluations, however, are not so dependent on a patient's subjective reporting. Thus, the ALJ did not err in reducing the weight of Dr. Pradhan's opinion because this opinion was partly based on the subjective reports of Plaintiff, who the ALJ found not to be credible.

The ALJ also relied on the opinion of Dr. Hankinson, who examined Plaintiff in January 2014 and determined Plaintiff's general appearance and back were normal; the neurological examination was nonfocal; lumbar spine x-rays from 2012, with the exception of some mild degenerative disease, were normal; no neurologic deficit was found; and Plaintiff did not describe radicular pain. AR 28. While Dr. Hankinson noted that he would need to review an MRI scan to make a definitive diagnosis

---

5. While at the hospital, an "EKG obtained in the ER showed normal sinus rhythm, but a possible left atrial enlargement, nonspecific ST abnormality, and an abnormal QRS–T angle. . . . There is no evidence that the claimant has reported any cardiac related symptoms to his medical providers, before or after his ER visit and the records submitted after the hearing did not include a cardiac evaluation." AR 28.

6. In assessing the severity of Plaintiff's back injury, the ALJ also considered Plaintiff's lack of significant ongoing treatment. AR 30. While the ALJ considered Plaintiff's lack of treatment, this does not appear to have been a large factor in his decision. Given Plaintiff's apparent lack of health insurance and inability to afford regular treatment, this was appropriate.

(AR 28), Dr. Pradhan similarly did not review an MRI scan and made no definite diagnosis. AR 306 (finding back issues "*may* also prohibit him from standing or walking) (emphasis added). To the extent Dr. Hankinson's findings contradict the findings of Dr. Pradhan, the ALJ was entitled to give more weight to Dr. Hankinson. Neither doctor can be characterized as a treating physician and both examined Plaintiff. In determining whether substantial evidence exists to support the ALJ's decision, the Court can "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Secretary of Health and Human Services*, 933 F.2d 799, 800 (10th Cir.1991). Examining the record as a whole, including portions that detract from the ALJ's decision, the Court finds that substantial evidence exists to support the ALJ's determination that Plaintiff can perform light work without restriction to the amount he can walk or stand. *See id.*

### D. The ALJ Committed No Err in Assigning Dr. Gzaskow's Opinion Little Weight

 The ALJ's RFC also contained the following mental limitations:

The claimant can understand, carry out, and remember detailed but not complex instructions and make commensurate work related decisions; respond appropriately to supervision, coworkers, and work situations; deal with routine changes in a work setting; and maintain concentration, persistence, and pace for up to and including 2 hours at a time with normal breaks throughout the work day.

AR 25. Plaintiff contends that in reaching this RFC, the ALJ failed to properly explain the weight he assigned to Dr. Gzaskow's opinions (Dr. Gzaskow found that Plaintiff had a difficult time relating to others based on his PTSD issues) and erred in limiting the weight of Dr. Gzaskow's opinion to the extent they were based on Plaintiff's subjective statements. ECF No. 20 at 10.

Plaintiff rests his argument on *Thomas v. Barnhart*, 147 Fed.Appx. 755, 759–60 (10th Cir.2005). This reliance, however, is misplaced for at least two reasons. First, while the Court may consider *Thomas* for its persuasive value, the decision is unpublished and nonbinding. 10th Cir. R. 32.1. Second, and more importantly, the Tenth Circuit stated in *Thomas* that an ALJ cannot *reject* a doctor's opinion "*solely* for the reason that it was based on [a claimant's] responses." *Id.* at 760 (emphasis added). *Thomas* does not stand for the proposition that an ALJ cannot, *in determining what weight to assign an opinion*, consider that the opinion is based on subjective information provided by the claimant. Instead, *Thomas* acknowledges that "psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Id.* at 759. In recognizing this fact and reasonably concluding that an ALJ may therefore not reject an opinion solely because it was based on a patient's statements, the Tenth Circuit did not say that an ALJ must lend a deaf ear to the statements underlying the opinion, no matter how unreliable those underlying statements might be. Although the ALJ cannot substitute his judgment for that of a psychiatrist, the Tenth Circuit has not forbidden an ALJ from considering information unavailable to the psychiatrist that discredits the subjective statements on which the psychiatrist relied. Thus, *as one factor* in limiting the weight of Dr. Gzaskow's opinion, the ALJ appropriately considered that his opinion was based on subjective statements from Plaintiff that the ALJ found to not be credible. *See* AR 30 ("Dr. Gzaskow makes clear that he is repeating the claimant's own statement.").

The ALJ further considered that Plaintiff worked as a convenience store cashier for a year and a half, that his job ended for nonmedical reasons, and that no reason exists to conclude that Plaintiff's medical condition worsened materially since he last worked. AR 30. The ALJ found it significant that Plaintiff testified he was capable of performing this job and was fired, not for medical reasons, but due to a misunderstanding related to his giving a computer code to an unauthorized person. AR 26. In limiting the weight of Dr. Gzaskow's opinion, the ALJ appropriately considered these facts.

Further, regardless of the weight given to Dr. Gzaskow's opinion, his opinion that Plaintiff has a difficult time relating to others is not necessarily inconsistent with Plaintiff's RFC. The ALJ determined that Plaintiff could "respond appropriately to supervision, coworkers, and work situations." AR 25. That Plaintiff might have a difficult time relating to supervisors, coworkers, or others with whom he comes into contact as part of his work is not the same as saying that he is unable to work with others.

Even if the RFC were inconsistent with Dr. Gzaskow's opinion, however, it is consistent with the opinion of Renate Wewerka, PhD. To the extent the opinions of Dr. Wewerka and Dr. Gzaskow present two fairly conflicting views, the Court cannot displace the agency's choice. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Bales v. Colvin*, 576 Fed. Appx. 792, 796 (inconsistencies between treating physician's form and other record evidence warranted giving opinions on the form less than controlling weight, and [Court] may not reweigh that evidence."). Dr. Wewerka found Plaintiff "limited to a wider range of medium, semi-skilled forms of work...." AR 66. He also concluded, "Claimant can understand, remember and carry out detailed, but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR 72. This is consistent with the mental limitation portion of the RFC which states, "the claimant can understand, carry out, and remember detailed but not complex instructions and make commensurate work related decisions; respond appropriately to supervision, coworkers, and work situations; deal with routine changes in a work setting; and maintain concentration, persistence, and pace for up to and including 2 hours at a time with normal breaks throughout the work day." AR 25. The ALJ relied on Dr. Wewerka's opinion as evidenced by his conclusion that his RFC assessment "is consistent with that of state agency psychiatric and psychological consultants." AR 30. Given Dr. Wewerka's assessment, substantial evidence exists to support the mental limitation portion of the ALJ's RFC.

### E. The ALJ Committed No Error in Not Re–Contacting Dr. Young–Rodriguez for Further Information About Functional Limitations

█ Plaintiff also contends that the ALJ failed to properly develop the administrative record because he did not re-contact consulting physician Dr. Young–Rodriguez after determining that Dr. Young–Rodriguez had failed to provide specific functional limitations in his report. ECF No. 20 at 11, AR 29. If the report of a consulting physician is inadequate or incomplete, the Social Security Administration will contact that doctor, give an explanation of its evidentiary needs, and ask the doctor to furnish the missing information or prepare a revised report. 20 C.F.R. § 416.919p(b). In analyzing a similar pro-

vision applicable to treating physicians, the Tenth Circuit noted, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty." *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir.2001) (internal quotations and brackets omitted). As with the ALJ in *White,* the ALJ here believed the information he received was adequate for consideration. Indeed, the ALJ discussed Dr. Young–Rodriguez's examination of Plaintiff (AR 28), the results of that examination (AR 28, 30), and, only after this consideration, assigned his opinion little weight. To the extent Plaintiff complains about the ALJ's decision to give Dr. Young–Rodriguez's opinion little weight, like the Tenth Circuit in *White,* this Court must accept "the nature and limits of its review," and not second-guess the ALJ by substituting its judgment for his. *White,* 287 F.3d at 909.

### F. The ALJ Adequately Considered the Mental and Physical Demands of Plaintiff's Past Relevant Work

 Plaintiff argues that the ALJ failed to adequately consider the mental and physical demands of his past relevant work. At Step Four, Phase Two, of the sequential analysis, an ALJ must make specific findings concerning the physical and mental demands of a claimant's past relevant work. *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir.2003). While "[i]t is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the

vocational expert," the ALJ "may rely on information supplied by the VE. at step four." *Id.* at 761. Here, the ALJ asked the vocational expert to "classify the claimant's past work performed in the last 15 years." AR 56. In response, the vocational expert provided the exertional and skill levels associated with Plaintiff's past relevant work as well as the *Dictionary of Occupational Titles ("DOT")* number associated with that work. AR 56. The ALJ then asked the vocational expert whether someone could do Plaintiff's past work if they had Plaintiff's "age, education and work experience," could "do work at the light exertional level as that term is defined," could "occasionally climb ramps or stairs; never climb ladders, ropes, and scaffolds," must "avoid concentrated exposure to extreme cold and heat … would have to avoid concentrated exposure to operational controlled moving machinery, unprotected heights and dangerous machinery," could "understand and carry out, and remember detailed but not complex instructions … could respond appropriately to supervision, coworkers and work situations; deal with routine changes in work settings; maintain concentration, persistence, and pace for up to two hours at a time with normal breaks throughout an eight-hour work day."[7] AR 57–58. In asking the vocational expert these questions, the ALJ explored with the vocational expert the demands of Plaintiff's past relevant work. Further, the ALJ made clear that he did not simply defer to the vocational expert. After the vocational expert testified, the ALJ explained to Plaintiff that the vocational expert offered him an opinion with regard to what people with

---

7. The ALJ's question with regard to "simple work-related decisions" is listed in the transcript as inaudible. The Court therefore did not quote this portion of the transcript. The ALJ's question to the VE, however, generally tracks the ALJ's RFC, in which he found that

Plaintiff could "remember detailed but no complex instructions and make commensurate work related decisions." Thus, it can be reasonably assumed that the ALJ asked the VE to assume a person who could make simple work-related decisions.

limitations like his might or might not be able to do and then gave Plaintiff's representative an opportunity to ask the vocational expert further questions. AR 59. Plaintiff's representative declined to ask further questions, stating, "I think it's all been covered quite well." AR 59.

The only medically established limitations at issue in this Phase Two analysis are those contained in the ALJ's RFC. *See Wells v. Colvin,* 727 F.3d 1061, 1075 (10th Cir.2013) (constraining Phase Two analysis to medically established limitations in RFC). Thus, the ALJ needed only to obtain enough information regarding these limitations to determine whether Plaintiff could perform his PRW as a fast food cook and convenience store cashier. *Wells,* 727 F.3d at 1075. The VE advised the ALJ that work as a fast food cook is light exertional and semiskilled with an SVP of 3 and that work as a convenience store cashier is light exertional, unskilled, with an SVP of 2.[8] AR 56. The Tenth Circuit's decision in *Wells* indicates that, by obtaining this information, the ALJ fulfilled his obligation at Phase Two. *See id.* ("[t]he ALJ questioned the VE concerning the bookkeeper job, and was told that it was a 'sedentary skilled occupation' at level six. Thus, the ALJ had sufficient information regarding the demands of Ms. Wells' bookkeeping job relevant to his RFC assessment, which included the full range of either light or sedentary work and featured no other specific mental or postural limitations. Furthermore, the ALJ made a sufficient finding concerning this issue when he stated that '[t]he claimant's past work of bookkeeper ... [was] sedentary in exertional level." (internal citations omitted)).

Here, the ALJ obtained more than just information about Plaintiff's exertional level, however. The ALJ also relied on the *DOT* description of the position. "It is well established that 'the agency accepts the [definitions in the *Dictionary of Occupational Titles* ] as reliable evidence at step four of the functional demands and job duties of a claimant's past job as it is usually performed in the national economy." *Bowman v. Astrue,* 511 F.3d 1270, 1273 n. 1 (10th Cir.2008). *Bowman* involved a claimant with limited use of her left hand and whose PRW all required frequent or constant "seizing, holding, grasping, turning, or otherwise working with hand or hands." *Id.* at 1273 (internal quotations and citations omitted). The ALJ in *Bowman* committed error by relying on the *DOT* Codes for the claimant's prior jobs without asking "the VE to give an opinion concerning whether Ms. Bowman's limited use of her left hand would affect her ability to perform the required handling activities." *Id.* The ALJ in the present case, however, did what the ALJ in *Bowman* did not. Rather than just relying on the *DOT* description of the duties of a fast food cook and convenience store cashier, the ALJ proposed a hypothetical to the VE that included Plaintiff's particular mental limitations. AR 58. Thus, *Bowman* lends support to the Commissioner's argument that the ALJ committed no error at Phase Two.

Similarly, the vocational expert in *Doyal:*

testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as

---

**8.** SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991), 1991 WL 688702 (G.P.O.); *see also Vigil v. Colvin,* 805 F.3d 1199, 1201 n. 2 (10th Cir.2015).

light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled. . . . The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

*Doyal*, 331 F.3d at 760 (internal citations and quotations omitted). The Tenth Circuit determined that the ALJ's reliance on this information was sufficient to meet the requirements at Phase Two. *Id.* at 761. Specifically, the Tenth Circuit determined "[t]he ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There was nothing improper about this. An "ALJ may rely on information supplied by the VE at step four." *Id.* at 761. Given that the ALJ's actions in the present case were similar to the actions of the ALJ in *Doyal, Doyal* also lends support to the Commissioner's argument that the ALJ committed no error at Phase Two.

Also offering support is the Tenth Circuit's decision in *Andrade,* where an ALJ used the *DOT* to determine that the claimant's PRW should be categorized as light even though the claimant's testimony regarding how he actually performed his work indicated a higher exertional rating. *Andrade v. Sec. of Health & Human Svcs.,* 985 F.2d 1045, 1050–51 (10th Cir.1993). The Tenth Circuit recognized that an "ALJ may rely on the [*DOT's*] job description for claimant's job category as presumptively applicable to a claimant's prior work." *Id.* at 1051. The Tenth Circuit then determined that, even if the claimant could not return to his past work as actually performed, the claimant failed to meet his burden "to demonstrate he cannot return to his former type of work, and not just to his previous job." *Id.* at 1052.

Unpublished Tenth Circuit cases further validate the notion that an ALJ's reliance on the *DOT's* description of PRW or a VE's description of the exertional and skill level of PRW is sufficient to meet the ALJ's burden at Phase Two. *See Bales v. Colvin,* 576 Fed.Appx. 792, 799–800 (10th Cir.2014) (ALJ's notation of claimant's past jobs as unskilled positions performed at the light exertional level combined with VE's response to hypothetical questions sufficient to support finding that claimant able to perform her PRW as actually performed); *Best–Willie v. Colvin,* 514 Fed. Appx. 728, 738 (10th Cir.2013) (VE's testimony regarding exertional and skill levels of PRW and the ALJ's reliance on *DOT* descriptions of PRW supported finding that the "ALJ obtained information concerning the physical and mental demands of [claimant's] past relevant work and appropriately relied on the vocational expert's testimony in her decision."); *Zaricor–Ritchie v. Astrue,* 452 Fed.Appx. 817, 825 (10th Cir.2011) (given definition of "unskilled job", VE testimony that dishwasher an unskilled job provided ALJ sufficient information regarding mental demands of claimant's PRW as dishwasher to determine that claimant could perform job in spite of mental limitations imposed by RFC); *But see Sissom v. Colvin,* 512 Fed. Appx. 762, 769 (10th Cir.2013) (reiteration of VE testimony regarding exertional and skill level of PRW insufficient to determine work demands of claimant's PRW).

In the present case, the ALJ had testimony from the VE about the exertional and skill level of Plaintiff's PRW as well as a description from the *DOT* of the physical and mental demands required of Plaintiff's PRW. By obtaining this information, the ALJ met his burden of determining the

mental and physical demands associated with his past relevant work. In contrast, Plaintiff failed to carry his burden of demonstrating that he is medically unable to perform that work. This is particularly true in light of the fact that Plaintiff has already performed this work since the onset of his injury and "likely would still be working as a cashier at Giant but for the misunderstanding with his employer." AR 30. As the ALJ stressed in his decision, the injuries that gave rise to Plaintiff's alleged disability occurred prior to this work (AR 26, 28) and "no reason exists to conclude that claimant's medical condition worsened materially since he last worked." AR 30. Thus, Plaintiff has already demonstrated that he has been able to perform the job of cashier despite his alleged disability.

### IV. CONCLUSION

Plaintiff carries the burden of demonstrating that he is medically unable to perform his past relevant employment. Plaintiff has failed to meet this burden. Having reviewed the record, the Court cannot say that the ALJ failed to apply the correct legal standards to his review of Plaintiff's claim, failed to provide sufficient reasoning in connection with this review, or that substantial evidence fails to support his conclusion. As a result, the decision of the Commissioner denying Plaintiff benefits is **AFFIRMED.**

**IT IS SO ORDERED.**